UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NATIONWIDE MUTUAL            )
INSURANCE COMPANY,           )
                             )
          Plaintiff,         )
                             )
     v.                      )          No. 4:22 CV 895 RWS
                             )
KALVIN EARL RICHARDSON,      )
                             )
          Defendant.         )

## MEMORANDUM AND ORDER

Plaintiff Nationwide Mutual Insurance Company filed this action for a declaratory judgment, seeking a determination of its rights and obligations under an insurance policy issued to Defendant Kalvin Earl Richardson.   The case is before me on Nationwide's motion for summary judgment.   For the reasons set forth below, Nationwide's motion will be granted in part and denied in part.

## BACKGROUND[1]

Richardson owns and operates Scooba, LLC.   (Doc. 19, Pl.'s Statement of Uncontroverted Facts (SUMF), ¶ 1).   In late-January or early-February of 2022, Scooba purchased a property located at 2210 Lucas and Hunt Road in St. Louis, Missouri (the Property).   (Id. at ¶ 2; Doc. 21, Def.'s Resp. to Pl.'s SUMF, ¶ 2).

---

[1] The information in this section is taken primarily from Nationwide's statement of controverted material facts to the extent the facts are supported by admissible evidence and are not specifically controverted by Richardson as required by Local Rule 7–4.01(E).

Scooba purchased the Property from the St. Louis County Collector of Revenue for $5,638.02 as a "Post Third Sale Offering."   (Pl.'s SUMF at ¶¶ 2–3).

The process for purchasing a property as a Post Third Sale Offering is as follows.   First, a property that has been delinquent on taxes for three consecutive years is offered for sale at the St. Louis County Collector of Revenue's annual tax sale.   (Id. at ¶ 4).   If the property does not sell at the first annual tax sale, the property is offered for sale at two subsequent annual tax sales.   (Id. at ¶ 5).   If the property does not sell after three annual tax sales, the property is offered for sale to the public as a Post Third Sale Offering.   (Id. at ¶ 6).   A property listed as a Post Third Sale Offering is made electronically available to the public and may be purchased through continuously solicited and processed bids.   (Id. at ¶¶ 6 & 8). Once a property is offered as a Post Third Sale Offering, the St. Louis County Collector of Revenue will transfer the property's title to the bidder who submits the highest bid that will satisfy the property's delinquent taxes.   (Id. at ¶ 9).[2]

After purchasing the Property, Richardson reached out to Nationwide in February of 2022 to inquire about obtaining an insurance policy on the Property. (Id. at ¶ 11).   Nationwide required Richardson to complete and submit an application for a homeowner's policy.   (Id. at ¶ 12).   In his application, Richardson

---

[2] Richardson attempts to create a dispute of fact as to whether the St. Louis County Collector of Revenue will transfer the property's title to the bidder who submits the *highest* bid, but the evidence cited by Richardson does not controvert this fact.   (Def.'s Resp. to Pl.'s SUMF at ¶ 9).

represented that the Property was not purchased at a public auction, as a short sale, or while in foreclosure.   (Id. at ¶ 15).   Richardson's application also included the following representations with respect to the Property's occupancy:

| Occupancy Details | Selected |
|---|---|
| Number of families | 1 |
| Occupancy | Owner |
| Number of Occupants | 2 |
| Secondary | No |
| Currently Owner Occupied | Yes |
| Rated age of named insured | 29 |
| Personal Status | Single |

(Doc. 19-3, Pl.'s Ex. 3, p. 1).   Richardson's application also contained the following statement above the signature line:

> I have read the above application and I declare that all of the foregoing statements are true; and that these statements are offered as an inducement to the Company to issue the policy for which I am applying. I agree that such policy may be null and void if the information that is provided in the above application is false or misleading in any way, whether intentional or unintentional.

(Pl.'s SUMF at ¶ 24).   Upon completion of Richardson's application, Nationwide sent him an electronic version to review and sign.   (Id. at ¶ 16).   Richardson reviewed the completed application and electronically affixed his signature.   (Id. at

¶¶ 20–21).   Richardson's signed application was then submitted to Nationwide. (Id. at ¶ 25).   Upon receiving Richardson's signed application, Nationwide agreed to issue a homeowner's policy (the Policy).   (Id. at ¶¶ 26–27).

On April 27, 2022, a fire occurred at the Property.   (Id. at ¶ 28).   Richardson later presented a claim to Nationwide for insurance proceeds under the Policy.   (Id. at ¶ 29).   Nationwide asserts that it learned several things for the first time during its investigation of Richardson's claim: Richardson purchased the Property at a public auction; Richardson did not occupy the Property at the time he applied for the Policy; Richardson never moved into the Property; Richardson never stayed overnight at the Property; there were no active utility services at the Property; and Richardson never activated any utility services at the Property.   (Id. at ¶¶ 30–35; Def.'s Resp. to Pl.'s SUMF at ¶¶ 30–35).

At the time he applied for the Policy, Richardson was staying with his mother in O'Fallon, Missouri.   (Doc. 19-2, Pl.'s Ex. 2, p. 5).   Richardson stayed with his mother until March of 2022, when he moved into an apartment with his girlfriend in St. Charles, Missouri.   (Id. at pp. 5–6).   Richardson signed a lease for the apartment in St. Charles, Missouri, which had a term of March 2, 2022, through February 1, 2023.   (Pl.'s SUMF at ¶¶ 37–38).   Richardson was living at the apartment in St. Charles, Missouri, when the fire occurred at the Property.   (Id. at ¶ 39).   Richardson asserts that he moved into the apartment in St. Charles, Missouri, due to an unlawful-

4

detainer action instituted against the previous occupant of the Property, who he believed was still entering the Property.   (Def.'s Resp. to Pl.'s SUMF at ¶¶ 45–47).

Nationwide filed this action on August 26, 2022, seeking the following declarations: the Policy is void *ab initio*; Richardson is not entitled to any coverage under the Policy; Nationwide is not liable to Richardson with respect to the April 27, 2022, fire loss at the Property; Richardson intentionally concealed and misrepresented material facts and circumstances in applying for the Policy; Richardson intentionally concealed and misrepresented material facts and circumstances during Nationwide's investigation of his claim; Richardson intentionally caused the April 27, 2022, fire loss at the Property by setting the fire, or conspired to cause the fire loss by directing someone to set the fire on his behalf; and Nationwide is entitled to recover all of its costs and expenses, including attorneys' fees.  (Doc. 1, Compl., ¶ 27).   Richardson responded to Nationwide's complaint and filed a counterclaim, seeking $335,000 in damages that he believes is owed to him under the Policy.   (Doc. 8, Answer & Countercl., p. 3).

Nationwide now moves for summary judgment.   Nationwide requests that I grant summary judgment in its favor and make the following declarations: the Policy is void *ab initio*; Nationwide is not liable to Richardson with respect to the April 27, 2022, fire loss at the Property; and Nationwide is entitled to recover its costs and expenses, including attorneys' fees, due to Richardson's fraud.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   In ruling on a motion for summary judgment, I must "'view the evidence in the light most favorable to the opposing party' and draw all reasonable inferences in favor of that party."  Cox v. First Nat. Bank, 792 F.3d 936, 938 (8th Cir. 2015) (quoting Tolan v. Cotton, 572 U.S. 650, 657 (2014)).   The movant bears the initial burden of informing me of the basis of its motion and identifying the portions of the record that show the absence of a genuine issue of material fact.   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Upon a properly supported motion, the opposing party must "respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'"   Togerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Celotex, 477 U.S. at 324).

## DISCUSSION

Nationwide argues that the Policy is void *ab initio* because Richardson misrepresented material facts in his application.   Under Missouri law, material misrepresentations in an application for an insurance policy may render the policy void from its inception.   See Cova v. American Family Ins. Co., 880 S.W.2d 928, 930 (Mo. Ct. App. 1994)). [3]   To avoid a policy based on a material

---

[3] The parties do not dispute that Missouri substantive law controls in this case.

misrepresentation, an insurance company must show that a representation was both false and material when: (a) the representation was warranted to be true; (b) the policy was conditioned upon its truth; (c) the policy provided that its falsity would avoid the policy; or (d) the application was incorporated into and attached to the policy.  Shirkey v. Guarantee Trust Life & Ins. Co., 141 S.W.3d 62, 67 (Mo. Ct. App. 2004)).  "A misrepresentation of fact is deemed material if the fact, stated truthfully, might reasonably have influenced the insurance company to accept or reject the risk or to have charged a different premium."  Central Bank of Lake of the Ozarks v. First Marine Ins. Co., 975 S.W.2d 222, 225 (Mo. Ct. App. 1998).

Nationwide argues that uncontroverted evidence shows that Richardson misrepresented the following material facts: (1) the Property was not purchased at a public auction; (2) the Property was owner occupied at the time he applied for the Policy; and (3) the Property was his "primary" residence at the time he applied for the Policy.  Richardson does not specifically argue that these representations were immaterial; he argues only that he did not misrepresent the facts.

As discussed below, I find that uncontroverted evidence shows that Richardson misrepresented that the Property was not purchased at a public auction. I also find that uncontroverted evidence shows that Richardson's misrepresentation was material.   As a result, the Policy is void *ab initio*.

**A.     Uncontroverted evidence shows that Richardson misrepresented that the Property was not purchased at a public auction.**

The parties do not dispute that Richardson represented that the Property was not purchased at a public auction.  (Pl.'s SUMF at ¶ 15).  The parties also do not dispute that Richardson purchased the Property as a Post Third Sale Offering from the St. Louis County Collector of Revenue.  (Id. at ¶ 3).  The parties dispute, however, whether the sale of a Post Third Sale Offering is a public auction.  (Id. at ¶¶ 7 & 10; Def.'s Resp. to Pl.'s SUMF at ¶¶ 7 & 10).

Nationwide characterizes the sale of a Post Third Sale Offering as "an ongoing public auction."  (Pl.'s SUMF at ¶¶ 7 & 10).  In support of this characterization, Nationwide cites affidavit testimony of Cynthia Johnson, who is a Manager of Revenue Services with the Delinquent Tax Division of the St. Louis County Collector of Revenue.  (Doc. 19-1, Pl.'s Ex. 1, ¶¶ 3–4).  Johnson oversees the administration of St. Louis County's "Post Third Sale Offerings" program.  (Id. at ¶ 4).  In her affidavit, Johnson states, among other things:

> 10.     A list of Post Third Sale Offerings is made publicly available by the St. Louis County Collector of Revenue.
>
> 11.     The list of Post Third Sale Offerings is made publicly available electronically on St. Louis County's website.
>
> 12.     Once a delinquent property has been publicly offered as a Post Third Sale Offering, any individual may directly place a bid on the delinquent property with the St. Louis County Collector of Revenue.

8

13.    If a bid is both the highest bid and the bid is sufficient to bring the property current on the delinquent taxes, deed to the property is transferred to the winning bidder by the St. Louis County Collector of Revenue.

14.    The sale of Post Third Sale Offerings represents an ongoing public auction wherein bids are continuously solicited and processed.

(Id. at ¶¶ 10–14).   Nationwide has also provided a copy of a "Post Third Sale Bid Form."   (Doc. 23-1, Pl.'s Ex. 7).   The Post Third Sale Bid Form states, among other things: "If you are the highest bidder, a collector's deed will be recorded and then issued to you as the highest bidder.   If you are not the highest bidder, the check submitted by you will be returned to you."   (Id. at p. 1).

Richardson asserts that the sale of a Post Third Sale Offering is not a public auction.   (Def.'s Resp. to Pl.'s SUMF at ¶¶ 7 & 10).   In support of this assertion, Richardson cites Johnson's testimony in her second affidavit.   In her second affidavit, Johnson states, among other things:

5.    The sale of Post Third Sale Offerings represents an ongoing public bidding process wherein bids are continuously solicited and processed, not a one-day public auction like those conducted for the first through third sales.

(Doc. 21-1, Def.'s Ex. A, ¶ 5).   Richardson also cites his own affidavit testimony, where he states:

2.    As I stated in my Examination Under Oath, I did not purchase this house through a public auction.   During the post third sale period, I submitted an offer for a listing for the property on the website, which was accepted.   There was no auction.

9

(Doc. 21-2, Def.'s Ex. B, ¶ 2).

"Public auction" was not defined in Richardson's application.   The term must therefore be given its plain and ordinary meaning.   See Shahan v. Shahan, 988 S.W.2d 529, 535 (Mo. banc 1999) ("When interpreting the language of an insurance contract, [a court] gives the language its plain meaning.").[4]   To determine the plain and ordinary meaning of a "public auction," I must consult standard English dictionaries.   Id.   The Merriam-Webster Dictionary defines an "auction" as "a sale of property to the highest bidder."   Auction, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/auction (last visited July 27, 2023). The Collins Dictionary defines an "auction" as "a public sale where items are sold to the person who offers the highest price."   Auction, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/auction (last visited July 27, 2023).   Dictionary.com defines an "auction" as "a publicly held sale at which property or goods are sold to the highest bidder."   Auction, Dictionary.com, https://www.dictionary.com/browse/auction (last visited July 27, 2023).

The Missouri Supreme Court has also cited other sources when discussing public auctions, which provide additional guidance as to the meaning of the term. See ABC Liquidators, Inc. v. Kansas City, 322 S.W.2d 876, 882 (Mo. 1959).   The Corpus Juris Secundum defines an "auction" as "a public sale of property to the

---

[4] The parties do not dispute that the rules in Missouri governing the interpretation of insurance contracts apply in this case.

highest bidder, by one licensed and authorized for that purpose."  7A C.J.S. Auctions and Auctioneers § 1 (May 2023 update).  The Corpus Juris Secundum also states that "competition among a number of bidders is a necessary element" of an auction and that, to construe a sale as an auction, a bid "must be made in the presence of other potential bidders."  Id.  The American Jurisprudence defines an "auction" as "a sale by consecutive bidding, intended to reach the highest price of the article by competition for it."  7 Am. Jur. 2d Auctions and Auctioneers § 1 (May 2023 update).  The American Jurisprudence also states that "[c]ompetitive bidding is an essential element" of an auction and that "[i]t is inherent in the concept of competition in bidding that more than one person has the opportunity to bid on the property or advance the current bid."  Id.  Black's Law Dictionary defines an "auction" as "[a] public sale of property to the highest bidder; a sale by consecutive bidding, intended to reach the highest price of the article through competition for it." Auction, Black's Law Dictionary (11th ed. 2019).

Upon review of the record, I find that uncontroverted evidence shows that the sale of a Post Third Sale Offering is a public auction.  First, uncontroverted evidence shows that a Post Third Sale Offering is made publicly available by the St. Louis County Collector of Revenue.  (Pl.'s SUMF at ¶ 6; Pl.'s Ex. 1 at ¶¶ 10–11). The sale of a Post Third Sale Offering is therefore a public sale.  Second, uncontroverted evidence shows that the sale of a Post Third Sale Offering is an

11

ongoing public bidding process where bids are continuously solicited and processed, and bidders are aware at the time of bidding that their bid will be accepted only if it is the highest bid.   (Pl.'s SUMF at ¶ 8; Pl.'s Ex. 1 at ¶ 13; Pl.'s Ex. 7 at p. 1; Def.'s Ex. A at ¶ 5).   The sale of a Post Third Sale Offering is therefore a competitive bidding process; while bidders may not be in the physical presence of other potential bidders at the time of bidding, they are aware of the potential for other bids, and they are aware that their bid will be accepted only if it is the highest bid.   Third, uncontroverted evidence shows that a Post Third Sale Offering is sold to the highest bidder.   (Pl.'s SUMF at ¶ 9; Pl.'s Ex. 1 at ¶ 13; Pl.'s Ex. 7 at p. 1).   These facts establish that the sale of a Post Third Sale Offering is a public auction.

Richardson's arguments to the contrary are unpersuasive.[5]   Richardson argues that Johnson's second affidavit clarifies that the sale of a Post Third Sale Offering is not an auction.   This is not true.   Johnson's second affidavit merely clarifies that the sale of a Post Third Sale Offering is not "a one-day public auction;" Johnson reiterates in her second affidavit that the sale of a Post Third Sale Offering is "an ongoing public bidding process wherein bids are continuously solicited and processed."   (Def.'s Ex. A at ¶ 5).   Richardson also argues that, if the sale of a Post Third Sale Offering were considered an auction, the sale of every house would be

---

[5] Richardson's reliance on Ramsay v. Vogel, 970 F.2d 471 (8th Cir. 1992) and Boulevard Bank v. Malott, 397 S.W.3d 458 (Mo. Ct. App. 2013) in defining an "auction" is equally unpersuasive because both cases involved statutory provisions.

considered an auction.  This is also not true.  In an ordinary sale of a house, the house is not necessarily sold to the highest bidder; a seller often considers many factors in determining to whom to sell the house.  An ordinary sale of a house is also not necessarily made after public notice.  Richardson argues further that the sale of the Property was not an auction because there were no other bidders.  Even if this fact were supported by evidence, which it is not, the fact would not necessarily contradict a finding that the sale of the Property was an auction because a sale's status as an auction is not dependent on the presence of multiple bidders; what is necessary is the presence of multiple *potential* bidders.  Finally, Richardson argues that the term "public auction" is ambiguous.  However, I find that the sale of a Post Third Sale Offering is public auction under any formulation of the cited definitions.

Because the sale of a Post Third Sale Offering is a public auction, Richardson's representation that the Property was not purchased at a public auction was false.  As a result, Richardson misrepresented that the Property was not purchased at a public auction.

**B.   Uncontroverted evidence shows that Richardson's misrepresentation that the Property was not purchased at a public auction was material.**

Having found that uncontroverted evidence shows that Richardson misrepresented that the Property was not purchased at a public auction, the remaining question is whether the misrepresentation was material.  In his application, Richardson warranted that all of his statements were true, he

acknowledged that his statements were offered as an inducement to Nationwide to issue the Policy, and he agreed that the Policy could be null and void if the information he provided was "false or misleading in any way, whether intentional or unintentional."  (Pl.'s SUMF at ¶ 24).   These facts satisfy two, if not three, conditions for avoiding a policy based on a material misrepresentation.   See Shirkey, 141 S.W.3d at 67.   Furthermore, uncontroverted evidence shows that Nationwide would not have issued the Policy, or at least would have charged a different premium for the Policy, if it had known that the Property was purchased at a public auction.  (Pl.'s SUMF at ¶ 41).   For these reasons, I find that uncontroverted evidence shows that Richardson's misrepresentation that the Property was not purchased at a public auction was material.

**C.    Genuine disputes of material fact remain as to whether Richardson made other material misrepresentations.**

Nationwide also argues that Richardson misrepresented that the Property was owner occupied at the time he applied for the Policy, that Richardson misrepresented that the Property was his "primary" residence at the time he applied for the Policy, and that these misrepresentations were material.   However, there is a genuine dispute of material fact as to whether Nationwide was aware of the Property's true occupancy/unoccupancy at the time it issued the Policy.  (Pl.'s SUMF at ¶ 42; Def.'s Resp. to Pl.'s SUMF at ¶ 42).   Richardson states in his affidavit that he informed Nationwide during the application process that he intended to move into

14

the Property *after* getting insurance.   (Def.'s Ex. B at ¶ 4).   Assuming this statement is true, it follows that Nationwide was aware at the time it issued the Policy that the Property was not *currently* owner occupied.   There is also a genuine dispute of material fact as to whether Richardson represented that the Property was his "primary" residence at the time he applied for the Property.   (Pl.'s SUMF at ¶ 13; Def.'s Resp. to Pl.'s SUMF at ¶ 13).   As Richardson correctly notes, on its face, his application did not contain the term "primary."   (Pl.'s Ex. 3 at p. 1).   And Nationwide has not cited any other evidence showing that Richardson's application contained a representation that the Property was his "primary" residence.

## CONCLUSION

Uncontroverted evidence shows that Richardson misrepresented a material fact in his application for the Policy, namely, that the Property was not purchased at a public auction.   Nationwide's motion will therefore be granted as to its requests for the following declarations: the Policy is void *ab initio*; Richardson is not entitled to any coverage under the Policy; and Nationwide is not liable to Richardson with respect to the April 27, 2022, fire loss at the Property.   In light of these declarations, I will also grant summary judgment to Nationwide on Richardson's counterclaim.

I decline, however, to make any of the remaining declarations requested in Nationwide's complaint or to award costs and expenses to Nationwide.   This is because it is unclear based on the evidence submitted whether Richardson

intentionally misrepresented material facts and engaged in fraud.  Nationwide's motion will therefore be denied without prejudice as to its request for a declaration that it is entitled to recover its costs and expenses, including attorneys' fees, due to Richardson's fraud.   Nationwide will be ordered to file one of the following within 14 days from the date of this Memorandum and Order: (a) a notice indicating that it intends to further pursue the declarations and relief requested in paragraphs 27(D)–(G) of its complaint, or (b) a motion to dismiss pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Nationwide Mutual Insurance Company's motion for summary judgment [17] is **GRANTED** in part and **DENIED** in part consistent with the discussion in this Memorandum and Order.

**IT IS FURTHER ORDERED** that the homeowner's insurance policy issued by Plaintiff Nationwide Mutual Insurance Company to Defendant Kalvin Earl Richardson, having policy number 72 24 HR 070115 and a policy period of February 23, 2022, through February 23, 2023, is void *ab initio*.

**IT IS FURTHER ORDERED** that Defendant Kalvin Earl Richardson is not entitled to any coverage under the homeowner's insurance policy issued to him by Plaintiff Nationwide Mutual Insurance Company, having policy number 72 24 HR 070115 and a policy period of February 23, 2022, through February 23, 2023.

**IT IS FURTHER ORDERED** that Plaintiff Nationwide Mutual Insurance Company is not in any manner liable to Defendant Kalvin Earl Richardson with respect to the April 27, 2022, fire loss that occurred at the property located at 2210 Lucas and Hunt Road in St. Louis, Missouri 63121.

**IT IS FURTHER ORDERED** that Plaintiff Nationwide Mutual Insurance Company is entitled to summary judgment on Defendant Kalvin Earl Richardson's counterclaim [8].   Defendant Kalvin Earl Richardson's counterclaim will be **DISMISSED** with prejudice.

**IT IS FINALLY ORDERED** that Plaintiff Nationwide Mutual Insurance Company shall file one of the following within **14 days** from the date of this Memorandum and Order: (a) a notice indicating that it intends to further pursue the declarations and relief requested in paragraphs 27(D)–(G) of its complaint, or (b) a motion to dismiss pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.

A separate Judgment in accordance with this Memorandum and Order will be entered at the conclusion of this case.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 28th day of July 2023.

17